IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

K.M.,[1]

        Plaintiff,

vs.                                                       Case No. 19-1160-SAC

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

**MEMORANDUM AND ORDER**

On June 15, 2015, plaintiff filed applications for social security child's insurance disability benefits and for supplemental security income benefits. Plaintiff alleged a disability onset date of December 16, 2014. The applications were denied initially and on reconsideration. An administrative hearing was conducted on October 4, 2017. The administrative law judge (ALJ) considered the evidence and decided on February 14, 2018 that plaintiff was not qualified to receive benefits. This decision has been adopted by defendant. This case is now before the court upon plaintiff's request to reverse and remand the decision to deny plaintiff's applications for benefits.

---

[1] The initials are used to protect privacy interests.

1

I.  STANDARD OF REVIEW

To qualify for disability benefits, plaintiff must establish that before she reached the age of 22 she was "disabled" under the Social Security Act. To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. See Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). "Substantial evidence" is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). This standard is "not high," but it is "more than a mere scintilla.'" Id. (quoting Consolidated Edison, 305 U.S. at 229). It does not require a preponderance of the evidence. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th

2

Cir. 1991)).  The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo.  Lax, 489 F.3d at 1084 (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)).  The court reviews "only the sufficiency of the evidence, not its weight."  Oldham v. Astrue, 509 F.3d 1254, 1257 (10th Cir. 2007).

II.  THE ALJ'S DECISION (Tr. 12-24).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision.  (Tr. 13-14). First, it is determined whether the claimant is engaging in substantial gainful activity.  Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe."  At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work.  Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that there are jobs in the economy with the claimant's residual functional capacity. Id. In this case, the ALJ decided plaintiff's application should be denied at the fifth step of the evaluation process.

The ALJ made the following specific findings in her decision. First, plaintiff was born in 1994 and had not reached the age of 22 as of the alleged onset of her disability. Second, plaintiff has not engaged in substantial gainful activity since December 26, 2014, the alleged onset date. Third, plaintiff has the following severe impairments: Landau Kleffner Syndrome, borderline intellectual functioning, cognitive disorder not otherwise specified and rule-out psychotic disorder. Fourth, plaintiff does not have an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Fifth, plaintiff has the residual functional capacity (RFC) to perform a range of medium work as defined in 20 C.F.R. 404.1567(a) and 416.967(c). Also, plaintiff:

> can understand, remember and apply simple instructions and can maintain concentration, persistence and pace for simple, routine and repetitive tasks that are not performed at a fast-paced production rate or as an integral part of a team. [Plaintiff] can occasionally

4

> interact with the general public. [Plaintiff] can adapt to changes in the work environment that are consistent with the aforementioned limitations.

(Tr. 17).

Sixth, the ALJ found that plaintiff has no relevant work. Finally, based upon the testimony of a vocational expert, the ALJ decided that considering plaintiff's age, education, work experience and residual functioning capacity, plaintiff could perform jobs that exist in significant numbers in the national economy, such as salvage laborer, lab equipment cleaner and packager.

III. DISCUSSION

Plaintiff's argument to reverse and remand the denial of benefits concerns the ALJ's consideration of a consultative psychological evaluation by Dr. Gary Hackney. The consultative examination was conducted in December 2012 which was approximately two years before the alleged onset date of disability.

Dr. Hackney found that plaintiff had no trouble walking, sitting or standing; that her speech was understandable; that her thought processes were logical, linear and goal-directed although slow; and that there were no signs of psychosis or perceptual abnormalities. (Tr. 394). He also found that plaintiff's abstraction skills were poor but her judgment was typical of individuals functioning at the borderline range of intelligence.

Id. Dr. Hackney diagnosed plaintiff with adjustment disorder with anxiety and borderline mental functioning. Id. He concluded:

> [Plaintiff] has been volunteering at Goodwill and maintaining a steady position there. She is able to get along well with others and has maintained numerous friendships and a boyfriend for over a year. [She] is able to maintain adequate relationships with coworkers and supervisors. She is able to adapt to changes in a typical work environment. She can make simple work decisions and perform and understand simple tasks but not in an average amount of time. She can sustain concentration over an eight-hour day in at least routine activity. She would not [b]e able to meet a work schedule with average performance demands.
>
> [She] is unable to manage her own finances.

(Tr. 394-95).

The ALJ cited Dr. Hackney's report as noting that plaintiff's thought processes had been described as logical, linear and goal-directed. (Tr. 16). The ALJ also cited Dr. Hackney's test results showing that plaintiff had a full-scale IQ score of 72 and that the doctor diagnosed plaintiff with borderline intellectual functioning. (Tr. 19). The ALJ said this diagnosis was "commensurate with" the findings of Dr. Greg Smith in 2015. The ALJ did not address Dr. Hackney's finding that plaintiff would not be able to satisfy a work schedule with average performance demands.

Plaintiff contends that this matter should be reversed and remanded because the ALJ failed to weigh Dr. Hackney's opinion regarding plaintiff's work capacity. Social Security regulations

require that "every medical opinion we receive" be evaluated, "[r]egardless of its source." 20 C.F.R. §404.1527(c). This requirement, stated in other words, has been applied to opinions that predate the alleged onset date of disability. In Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004), the court remarked that: "even if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ." The court, in Hamlin, reversed and remanded a denial of benefits because, after meticulous consideration, the court concluded that the ALJ improperly evaluated two treating physicians' opinions which were given prior to the relevant coverage period.[2] The treating physician's opinions reflected the claimant's lengthy history of pain and range of motion issues, and referred to x-rays showing a compression fracture of several cervical vertebrae. There was no indication that the opinions were not relevant simply because they predated the alleged date of disability.

Similarly, in Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008), the Tenth Circuit held that it was "error" for the ALJ not to acknowledge medical evidence created before the onset date

---

[2] The Commissioner argued that evaluating the opinions would reopen the adjudication of a previously rejected claim, but the Tenth Circuit rejected this argument. Id. at 1215-16 n. 8.

7

of disability because Social Security regulations (20 C.F.R. §§ 404.1520(a)(3) and 416.920(a)(3)) require the ALJ to "consider all evidence in [the]case record when [he] makes a determination or decision whether [claimant is] disabled" and because the Tenth Circuit "requires the ALJ to discuss 'the significantly probative evidence he rejects.'" Id. (quoting Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996)). This portion of the Clifton decision was also quoted in Hamlin, 365 F.3d at 1217. In Carpenter, the court faulted the ALJ for failing to acknowledge evidence of multiple back and neck problems starting when the claimant was two years old and continuing into adulthood. This included evidence (used as background for the opinion of a pain specialist) that a tumor was removed from the claimant's back at T-11 when she was less than two years old and that this tumor was treated with chemotherapy and radiation. This evidence was considered relevant because there was an issue for the purpose of applying Listing 12.05C as to whether the claimant had a physical impairment other than an admitted mental impairment.

Other cases recognize the potential relevance of evidence predating the alleged onset date of disability and the requirement to evaluate such evidence. These cases include: DeBoard v. Commissioner of Social Security, 211 Fed.Appx. 411, 414 (6th Cir. 2006)("We do not endorse the position that all evidence or medical records predating the alleged date of the onset of disability ...

8

are necessarily irrelevant.... We recognize that evidence ... predating the onset of disability, when evaluated in combination with later evidence, may help establish disability."); Burks-Marshall v. Shalala, 7 F.3d 1346, 1348 n. 6 (8th Cir. 1993)("Evidence from the record of a prior claim may be relevant to a claim of disability with a later onset date."); Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 193 (1st Cir.1987) (noting that "the ALJ is entitled to consider evidence from a prior denial for the limited purpose of reviewing the preliminary facts or cumulative medical history necessary to determine whether the claimant was disabled at the time of his second application"); see also, e.g., Teresa V. N. v. Saul, 2019 WL 4750587 *4 (N.D.Okla. 9/30/2019); Howry v. Saul, 2019 WL 4739687 *3 (W.D.Okla. 9/27/2019); Schoonmaker v. Berryhill, 2017 WL 4422597 *3-4 (W.D.Okla 10/5/2017); Austin v. Colvin, 2015 WL 1209384 *4-5 (E.D.Okla. 3/17/2015); Brown v. Colvin, 2015 WL 4390252 *9 (D.Kan. 7/15/2015); Breckenridge v. Astrue, 2011 WL 3847179 *4 (D.Kan. 8/30/2011).

In opposition, defendant relies primarily upon an unpublished decision: Arterberry v. Berryhill, 743 Fed.Appx. 227 (10th Cir. 2018). In Arterberry, the claimant's treating physician rendered an opinion that the claimant "had no ability to accept work-related instructions or respond appropriately to criticism and only limited abilities in the areas of attendance/punctuality,

attention/concentration, decisionmaking, performance, coworker interactions, coping with stress, and responding to work changes." Id. at 229. The ALJ discounted this opinion in part because it was inconsistent with the physician's own examinations showing "essentially normal mental status testing" and because plaintiff's treatment involved nothing more than basic medication with no hospitalization or counseling services. Id. In support of the treating physician's opinion, claimant argued that the ALJ erred by failing to evaluate or even mention a consultative mental examination which predated the claimant's alleged onset date of disability. The consultative examination concluded that the claimant would likely require structure, supervision and support to meet the demands of a work environment because of the claimant's anxiety, depressive symptoms, impaired concentration and short-term memory.

The Tenth Circuit rejected this argument stating:

> [Claimant] cites no authority, and we have found none, requiring an ALJ and agency reviewers to discuss the opinions of a consultative examiner from a prior disability proceeding—one that may have involved different medical issues and evidence, and that resulted in a denial of benefits. Indeed, an ALJ is not even required to discuss every piece of evidence in the ongoing disability proceeding, so long as the record shows she considered all of the evidence. See Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Further, it is unclear whether [the consultative examiner's] opinions actually support [the treating physician's] defined limitations or undermine the ALJ's RFC findings in any significant way. Even if [the consultative examiner's] opinions "may ... have supported contrary

10

findings, we may not displace the agency's choice between two fairly conflicting views." Oldham v. Astrue, 509 F.3d 1254, 1257-58 (10th Cir. 2007) (quotation and brackets omitted).

Id. at 230.

The court construes the Arterberry decision as following the Clifton principles which require an ALJ to discuss significantly probative evidence he or she rejects, and require that the ALJ must consider, but need not discuss, every piece of evidence. 79 F.3d at 1009-1010. The Tenth Circuit, in Arterberry, appears to have decided that the claimant had not shown the consultative examiner's report was significantly probative in supporting the opinion of the treating physician. In the words of the court, the opinion "may have involved different medical issues and evidence," so it was "unclear" whether it "actually support[ed]" the treating physician's findings or "undermine[d] the ALJ's RFC findings in any significant way."

Here, upon review, the court holds that Dr. Hackney's opinion that plaintiff could not perform simple tasks in an average amount of time or meet a work schedule with average performance demands is significantly probative evidence which is contrary to the ALJ's RFC findings. Consistent with Clifton, Hamlin, Carpenter and Social Security regulations, the ALJ should have evaluated and discussed this evidence. The ALJ's failure to do so constituted a legal error.

Finally, defendant argues that substantial evidence supports the decision to deny benefits whether or not the ALJ fully considered and evaluated Dr. Hackney's report. Defendant supports this argument in part by citing Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2018) where the Court stated that the substantial evidence standard was "not high." Although part of plaintiff's argument in this case asserts that substantial evidence to deny benefits is absent, plaintiff's main contention is that the ALJ failed to apply the correct legal standards. The court is obliged to consider whether the correct legal standards were followed in addition to deciding whether substantial evidence supports any factual findings. See Golden-Schubert v. Commissioner, SSA, 773 Fed.Appx. 1042, 1046 (10th Cir. 2019)(citing Hamlin, 365 F.3d at 1214). Here, we find that a legal error was committed which requires the court to reverse and remand the decision to deny benefits.

IV. CONCLUSION

For the above-stated reasons, the court directs that the decision of the Commissioner is reversed and that judgment shall be entered pursuant to sentence four of 42 U.S.C. § 405(g) remanding the case for further proceedings consistent with this memorandum and order.

**IT IS SO ORDERED.**

Dated this 7th day of January, 2020, at Topeka, Kansas.

                                           s/Sam A. Crow
                                           Sam A. Crow, U.S. District Senior Judge